## Maremont, Wolfson & Cohen Company, Appellees, v. Schwarzschild & Sulzberger Company, Appellant.

### Gen. No. 20,882. (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed on remittitur; otherwise reversed and remanded. Opinion filed October 5, 1915.

### Statement of the Case.

Action by Maremont, Wolfson & Cohen Company, a corporation, plaintiff, against Schwarzschild & Sulz-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

berger Company, a corporation, defendant, in the Municipal Court of Chicago, to recover on a written contract. From a judgment for plaintiff for $2,431.10, defendant appeals.

Plaintiff's second amended statement of claim is in part as follows:

"Plaintiff is in the business of manufacturing and repairing wagons. Defendant is engaged in the business of beef and pork packing. For about eight months prior to November 23, 1908, plaintiff performed work of repairing on defendant's wagons. On November 23, 1908, plaintiff submitted to defendant a proposal, a copy of which is as follows:

We propose to furnish all materials and labor to repair, paint and fully maintain all your rolling stock equipment, listed below, connected with your stables at Chicago, as follows: We will take your equipment in its present condition and *keep it in repair;* you agree to let us do *all* your *overhauling and repainting* of the wagons, buggies and carts now in your stables, as listed below; you to have the liberty to add or diminish the number of each class of vehicles according to the needs of your business.

15 single wagons, 16 double wagons, 2 four horse wagons, 7 dump carts and cripple carts, 11 buggies, 1 mail cart, and 12 shop fat wagons.

We will overhaul and repaint any single wagon at $56.25, double wagon at $70.20, four horse wagon at $76.50, buggies at $33.75, dump carts and cripple carts at $22.50, mail cart $25, and shop fat wagons $70; all overhauling and general repairing and painting to be done at our factory, we to call for and deliver the work. In overhauling we agree to take all springs apart and clean and oil them before painting. * * * Our price for overhauling your buggies does not include the maintenance and replacement of your rubber tires.

For and in consideration of your agreeing to give us *all* your business on the *overhauling and repainting* of your wagons, we agree to keep all your rolling stock in repair *throughout the year* without charge. We

agree to pay you for all petty repairs which you may find advisable to have done at your own shops by your own men, such as repairing or tightening clips, putting in or tightening bolts, etc. * * * We agree to do all the work in an expeditious manner and at such time as will least interfere with your business. You are to pay us on the 10th day of each month for all the overhauling and repainting done by us during the preceding month, terms net cash. It being understood that we will make bills for each job we overhaul at the foregoing prices, and that the *light running repairs* done on your vehicles are not to be billed, *the cost thereof being contemplated in the above* itemized prices.

This contract to run for *two years from date,* and to continue after that time until cancelled by either party giving thirty days' notice to the other party, and shall cease upon the termination of such thirty days' notice, excepting on the equipment that has been overhauled and repainted *less than a year* previous to date of cancellation. On this equipment the contract is to run until *one year* from date of overhauling.

Your acceptance of this proposition will constitute a contract, which we agree to live up to to your entire satisfaction and in case this work is not done to your satisfaction we grant you the right of cancelling this contract when you see fit.

MAREMONT, WOLFSON & COHEN Co.

per L. S. Maremont.

Accepted
    SCHWARZSCHILD & SULZBERGER Co.
        per E. B. Kitzinger.
Jany. 23, 09.''

It was further alleged that a modification of the contract was proposed by defendant after accepting the contract by which other wagons were included in the contract, and that the fat wagons referred to should be eliminated therefrom. In the affidavit of defense these allegations were admitted.

Plaintiff's treasurer testified to letters and statements sent by plaintiff to defendant's purchasing

622    APPELLATE COURTS OF ILLINOIS.

Maremont et al. v. Schwarzschild & Sulzberger Co., 194 Ill. App. 619.

agent, which witness had personally dictated, signed and mailed in the usual course of business, and copies which witness testified were correct were admitted in evidence, due notice having been given defendant to produce the originals.   The evidence and the testimony of plaintiff's treasurer tended to show a constant insistence by plaintiff on a construction of the contract requiring each wagon included in the contract to be painted as well as repaired at least once a year, and an attempt by defendant to have its wagons repaired under the contract without expense, without having them repainted.   Defendant's letters contained such expressions as, "We are doing what we can to get these wagons into you within a year's time to be repaired."   In another letter defendant said: "We are anxious to have our wagons go through your shop once a year."   In no letter does defendant refer to plaintiff's contention that each wagon must be repainted once a year at the contract price, as part of the consideration of the contract, though the record shows that in answer to a letter from plaintiff pointing out that under the contract, "the time of painting is the time when I get the yearly contract price," defendant's purchasing agent replied, whether verbally or in writing does not appear, that such was defendant's understanding.

It appeared that during the first year of the contract, out of 20 single wagons 15 were repaired under the contract, and 10 only were repainted, and all 15 double wagons were overhauled, but only 8 were repainted.   During the second year, defendant operated 20 single and 15 double wagons, 12 buggies, 7 carts and 1 mail cart, and of these 13 single and 9 double wagons, 9 buggies and 2 carts were repaired, repainted and paid for, while 7 single and 6 double wagons, 3 buggies, 5 carts and 1 mail cart were repaired but not repainted.

The items for which plaintiff recovered consisted, in substance, of claims for the stipulated price for painting the wagons which under the contract defendant should have had repainted, but did not, with the exception of one item for a balance on an account submitted to defendant and admitted to be correct.

WILLIAM R. BROWN, for appellant.

LITZINGER, McGURN & REID, for appellee; E. R. LITZINGER, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. DEPOSITIONS, § 9*—*when court may limit scope of interrogatories.* Where interrogatories required answers not only as to the times and places of interviews between representatives of plaintiff and defendant, but also *all* that was said thereat, a ruling of a justice of the Municipal Court of Chicago that only the questions as to the times and places of such interviews need be answered, *held* not an abuse of discretion under section 32 of the Municipal Court Act (J. & A. ¶ 3344), providing that such justice *"may* permit the filing * * * of interrogatories * * * and * * * require an answer under oath" thereto, where at the trial plaintiff's representative testified fully, as far as material, as to what was said at such times and places, so that defendant was not prejudiced by such ruling.

2. PRODUCTION OF BOOKS AND PAPERS, § 10*—*when subpoena duces tecum unnecessary.* Letters and statements sent to one in his official capacity as purchasing agent of a corporation are not letters to a third person, requiring a subpoena duces tecum to such third person to compel the production of such writings at the trial, but are in effect letters to the corporation, and if on proper notice the originals are not produced, *held* not error to permit plaintiff to introduce copies in evidence.

3. CONTRACTS, § 377*—*when evidence of transactions before execution admissible.* In an action to recover on a written contract for repairing and repainting defendant's wagons, *held* not error to admit in evidence written orders for such painting and repairing, "as per contract," sent by defendant to plaintiff prior to defendant's

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

624        APPELLATE COURTS OF ILLINOIS.

Maremont et al. v. Schwarzschild & Sulzberger Co., 194 Ill. App. 619.

formal written acceptance of the contract, it appearing that such orders were sent to plaintiff as under the contract, and afterwards executed by it thereunder, for the reason that the fact that parties treated the contract as being in force prior to such acceptance by defendant does not cause the application of the rule that negotiations leading up to a contract are merged therein.

4. CONTRACTS, § 177*—*how construed.* In an action to recover on an ambiguous written contract, where the construction contended for by plaintiff was that defendant was bound to have each of its wagons repainted by plaintiff at least once a year during the term, at a price stipulated in the contract, contract construed and *held* to show an intention that each vehicle named should undergo a general overhauling and repainting by plaintiff each year during the life of the contract, such intention being inferred from the use of the words "throughout the year" and "one year" used in the contract.

5. EVIDENCE, § 351*—*when parol evidence admissible to aid in construction of written contract.* In an action on an ambiguous written contract, *held* not error to admit evidence of correspondence and conversations between representatives of the parties, either occurring at the time the contract was made, or during its performance, for the reason that such evidence, if it tends to show what construction the parties themselves placed thereon, is always admissible in aid of its construction, the rule being that where it appears that parties have given to the instrument a particular construction by acting upon it in a particular way, the court will usually adopt such construction.

6. WITNESSES, § 194*—*when use of memorandum allowed.* In an action to recover on a written contract, *held* not error to allow a witness to refresh his recollection by consulting a memorandum.

7. WITNESSES, § 185*—*when answer not responsive.* Where a witness is called to testify as to market prices for painting a certain sort of wagons, *held* not error to strike out his testimony where it appears that his testimony is of the prices which he charged in his own business for such work, and not of the market price.

8. INTEREST, § 19*—*when improper to allow.* In an action to recover on a written contract for repairing and repainting wagons, a judgment of $2,431.10 for plaintiff, which included interest on all items for which plaintiff recovered, *held* excessive to the extent of $331.17, for the reason that interest to that extent was improperly allowed, plaintiff's damages, except as to one item which was admitted, being not sufficiently certain to enable defendant to know, prior to verdict, what it owed, and hence the statute as to interest was inapplicable.